UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAVELLE MALONE, **Plaintiff,** v. BENJAMIN, et al., **Defendants.** | CAUSE NO. 3:23-CV-944-JTM-JEM |

### OPINION and ORDER

Lavelle Malone, a prisoner without a lawyer, filed a complaint. (DE # 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Malone alleges that on June 22, 2023, at approximately 5:42 a.m., he was subjected to a strip search at the Miami Correctional Facility by Probation Officer Benjamin, an unknown parole officer, and an unknown e-squad officer. He does not provide any details about the search itself. He was then ordered to put on boxer shorts,

a t-shirt, and shower shoes and instructed to walk—without restraints—to the new cell he was being transferred to. He claims the "boxer shorts exposed my genitals through the fabric" and that he was seen by several women in his boxer shorts as he walked, including a female officer named Sgt. Kirby. (DE # 1 at 2.) He alleges the strip search was "motivated by a desire to harass or humiliate and cause psychological pain." *Id*.

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id*. at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id*. at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id*. at 781. When reviewing these types of claims, courts must

2

evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id*. at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification—conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id*. at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of: (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id*. at 784 (quoting *Bell*, 414 U.S. at 559).

For claims brought under the Eighth Amendment, on the other hand, there is a heightened subjective intent requirement. *Id*. at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. at 781.

Malone provides no details about the strip search itself or what prompted it. He concludes that it was "motivated by a desire to harass or humiliate and cause psychological pain," but he doesn't provide any facts to plausibly support that

3

assertion. To the extent he claims he was observed afterwards in his boxer shorts by several women, this fails to state a claim as well. *See e.g., Henry*, 969 F.3d at 783 ("incidental observations of undressed inmates" are "almost always reasonable"); *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir. 2003) (strip search of male prisoner in front of female officers does not automatically violate the Constitution if conducted for a legitimate penological purpose). Accordingly, based on the sparse facts presented in the complaint, it is not plausible to infer the search violated the Constitution. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

Malone also claims the vent in his new cell was blowing cold air that "felt like 55 degrees." (DE # 1 at 2.) He wasn't provided with a mattress, blanket, or sheet when he got there. The cell had no working sink or toilet. He informed the unknown e-squad officer that "nothing was working" and that he was cold, but the officer didn't assist him. *Id*. He was forced to stay in this cell for six hours "balled up just to keep warm." *Id*. at 3. He claims all three defendants were "deliberate[ly] indifferent to [his] substandard living conditions." *Id*.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis*, 468 F.3d at 493. On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, Malone's allegations are insufficient to suggest the defendants violated his constitutional rights. He was transferred to the new cell during the summer—in late June—where the vent blew what felt like 55-degree air on him, and he wasn't provided with bedding. The alleged length of this deprivation was six hours. It's true that "prisoners have a right to protection from extreme cold" *Dixon v. Godinez*, 114 F.3d 640,

642 (7th Cir. 1997), but Malone hasn't described the sort of extreme deprivation necessary to trigger Eighth Amendment protection. *See id*. at 643 ("Moreover, it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional."). The same is true of Malone's allegation that the cell lacked a toilet and running water. *See e.g., Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (noting that the Eighth Amendment is violated where prisoners are deprived of "running water only in extreme circumstances"); *see also Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) ("[t]emporary lack of toilet access is not cruel and unusual punishment"); *White v. Knight*, 710 Fed. Appx. 260, 261–62 (7th Cir. 2018) (While "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]" do not.). Overall, the complaint does not plausibly describe conditions to suggest Malone was knowingly or intentionally deprived of the minimal civilized measure of life's necessities. *See e.g. Gray*, 826 F.3d at 1005 (noting that "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation *even if it would not be impermissible if it were only a short-term problem*") (emphasis added).

This complaint does not state any claims for which relief can be granted. Nevertheless, Malone may file an amended complaint if he believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United*

6

*States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes that form.

Finally, Malone filed a motion to compel. (DE # 9.) In it, he asks the court to compel the Warden of the Miami Correctional Facility to provide him with the correct first and last names of the defendants listed in his complaint. Because Malone's current complaint doesn't state any claims, it is unnecessary at this time to order the Warden to do so. If Malone files an amended complaint that alleges a plausible claim against any of the defendants described, the court may order the Warden to assist at that time.

For these reasons, the court:

(1) **DENIES** the motion to compel (DE # 9);

(2) **GRANTS** Lavelle Malone until **April 8, 2024**, to file an amended complaint; and

(3) **CAUTIONS** Lavelle Malone if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

                         **SO ORDERED.**

Date: March 6, 2024

                         s/James T. Moody
                         JUDGE JAMES T. MOODY
                         UNITED STATES DISTRICT COURT