UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

    Plaintiff,

    v.                            CAUSE NO. 3:23-CV-944-JTM-JEM

BENJAMIN, et al.,

    Defendants.

## OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed an amended complaint.[1] (DE # 12.) "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Malone is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads

---

[1] He also filed a motion for leave to amend his complaint (ECF 11), but that motion will be denied as moot because the court already granted him leave to do so (*see* ECF 10).

facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Malone alleges that on June 22, 2023, at approximately 5:42 a.m., he and his cellmate were subjected to a strip search at the Miami Correctional Facility by Probation Officer Benjamin, an Unknown Parole Officer, and an Unknown E-squad Officer. He was ordered to "open my mouth, lift my tongue, run my fingers behind both my ears, and lift my genitals, turn around spread my ass cheeks, squat and cough." (DE # 12 at 2.) Although there was "no riot [and] no offenders or officers stabbed or hurt," the officers had their guns pointed at Malone and his cellmate the entire time. *Id*. During the search, the officers called Malone and his cellmate "faggots" and "punk bitches," and they "made it clear this search was to 'teach me/us a lesson.'" *Id*. at 3. The officers stated, "[I]f you guys want to act like animals, we'll treat you like animals." *Id*. Malone's unit was the only one searched in the prison that day. He believes the search was done to "punish me/us" for the conduct of others in the unit. *Id*. After the strip-search concluded, Malone was ordered to put on boxer shorts, a t-shirt, and shower shoes and instructed to walk to the new cell he was being transferred to. He claims his "genitals [were] exposed through the fabric" and that he was seen by a female officer named Sgt. Kirby. *Id*. He has sued Probation Officer Benjamin, the Unknown Parole Officer, and the Unknown E-squad Officer for monetary damages and injunctive relief.

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth

2

and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id*. at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id*. at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id*. at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id*. at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification: conducting thorough searches as part of

3

the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id*. at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of: (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id*. at 784 (quoting *Bell*, 414 U.S. at 559). For claims brought under the Eighth Amendment, there is also a heightened subjective intent requirement. *Id*. at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. at 781.

Malone states he is bringing his claims pursuant to the Eighth Amendment and insists the search was done solely as a form of punishment to harass and humiliate him, not for the purpose of finding any contraband on his person. Although further investigation may reveal the actions of the officers were constitutional under the circumstances, giving Malone the benefit of the inferences to which he is entitled at this stage, he has stated plausible claims against the officers for the strip search itself. *See e.g., Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) ("[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional.") (internal quotation marks and citation omitted)). However, to the extent he claims he was observed afterwards in

4

his boxer shorts by Sgt. Kirby, these allegations fail to state a claim. *Henry*, 969 F.3d at 783 ("incidental observations of undressed inmates" are "almost always reasonable").

Malone also claims Probation Officer Benjamin, the Unknown Parole Officer, and the Unknown E-squad Officer purposefully subjected him to unconstitutional conditions of confinement by placing him in a dilapidated cell as further punishment after the strip search. When they arrived, they all stated, "[H]ow do you like this cold freezing cell? I bet you all will stop acting like animals now." (DE # 12 at 3.) Malone describes the cell as "filthy, the stench was overwhelming, urine was on the floor with dead roaches, and dried up vomit." *Id*. When Malone asked the Unknown E-squad Officer for cleaning supplies, he denied the request and said, "[Q]uit crying like a bitch, you made your bed hard so lay in it." *Id*. Malone claims the "air conditioner was blowing freezing cold air out the vent, which felt like 45 [degrees]," so he asked for his clothes back because his extremities were getting cold, but the officers refused. *Id*. They also refused to give him a mattress, sheets, or a blanket. Malone told the Unknown E-squad Officer neither the sink nor toilet in the cell worked and that the toilet had urine and feces in it. The Unknown E-squad Officer laughed and said, "[T]ake it like a man bitch." *Id*. Malone remained in the cell for six hours.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently

5

serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (internal quotation marks and citation omitted). Amorphous claims about "overall conditions" do not "rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. (internal quotations marks and citation omitted). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, although the conditions Malone describes were undoubtedly unpleasant, he states he was only subjected to them for six hours, so they are akin to a temporary inconvenience rather than a constitutional deprivation. He was placed in the new cell on June 22, 2023, a day on which the high temperature was 84 degrees, and the low temperature was 64 degrees near Bunker Hill, Indiana.[2] Although he claims the vent blew cold air on him and that he wasn't provided with bedding or additional clothing, this situation occurred in the morning to early afternoon hours,[3] so it's not reasonable to infer his sleep was disturbed. It's true that "prisoners have a right to protection from extreme cold" *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), but Malone hasn't described the sort of extreme deprivation necessary to trigger Eighth Amendment protection. *See id.* at 643 ("Moreover, it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional."). The same is true of Malone's allegation that the cell lacked a working toilet and running water for the six hours he was there. *See e.g., Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (noting that the Eighth Amendment is violated where prisoners are deprived of "running water only in extreme circumstances"); *see also Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) ("[t]emporary lack of toilet access is not cruel and unusual punishment"); *White v. Knight*, 710 Fed. Appx. 260, 261–62 (7th Cir. 2018) (While "long-term deprivations of modern toilet

---

[2] *See* https://www.wunderground.com/history/daily/us/in/west-lafayette/KLAF/date/2023-6-22 (last visited Apr. 16, 2024).

[3] He claims the strip search happened at 5:42 A.M. and that he was taken to the cell shorty thereafter.

7

facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]" do not.).

Similarly, the fact that there was urine, dried vomit, and dead roaches on the floor is certainly unsightly. However, Malone admits he was wearing shower shoes and was able to either sit or lay on the steel bunk for the short time he was in the cell rather than on the floor; the allegations do not suggest he was forced to come into contact with the dead roaches or dried fluids other than incidentally on his shoes. Overall, the complaint doesn't describe conditions such that Malone was knowingly or intentionally deprived of the minimal civilized measure of life's necessities. *See e.g. Gray*, 826 F.3d at 1005 (noting that "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation *even if it would not be impermissible if it were only a short-term problem*") (emphasis added).[4]

Finally, Malone filed a motion to compel. (DE # 13.) In it, he asks the court to compel the Warden of the Miami Correctional Facility to provide him with the correct first and last names of the defendants listed in his amended complaint. The motion will be granted to the extent the Warden will be directed to identify the defendants or show cause why he is unable to do so.

---

[4] Malone also seeks injunctive relief "so defendants cannot continue to violate my constitutional rights." (DE # 12 at 5.) However, it is not plausible to infer from the facts alleged that the defendants he has sued will continue to strip-search him for punitive purposes in the future or that they will place him in unconstitutional conditions, especially considering he was moved from the problematic cell within six hours. These allegations don't plausibly state a claim, so his request for injunctive relief will be denied. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original); *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

For these reasons, the court:

(1) DENIES the motion for leave to amend as moot (DE # 11);

(2) GRANTS Lavelle Malone leave to proceed against Probation Officer Benjamin, the Unknown Parole Officer, and the Unknown E-squad Officer in their individual capacities for compensatory and punitive damages for subjecting him to an unconstitutional strip search on June 22, 2023, at approximately 5:42 A.M., in violation of the Eighth Amendment;

(3) DIRECTS the clerk to add the Warden of the Miami Correctional Facility in his official capacity as a defendant only for the purpose of identifying the first and last names of the unknown defendants;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Miami Correctional Facility at Indiana Department of Correction with a copy of this order and the amended complaint (DE # 12);

(6) WAIVES the Warden of the Miami Correctional Facility's obligation to file an answer to the complaint;

(7) GRANTS the motion to compel (DE # 13) to the extent that the court ORDERS the Warden of the Miami Correctional Facility to appear and identify the first and last names of Probation Officer Benjamin, Unknown Parole Officer, and Unknown E-squad Officer on or before **May 30, 2024**, or show cause why he is unable to do so;

9

(8) DIRECTS the clerk to send Lavelle Malone a copy of his amended complaint (DE # 12); and

(9) GRANTS Lavelle Malone until **June 20, 2024**, to amend that amended complaint to name the previously unknown correctional officers by crossing out the unknown names and replacing them with the new ones.

**SO ORDERED.**

Date: April 30, 2024

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT