**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

LAVELLE MALONE,

          **Plaintiff,**

          **v.**                        **CAUSE NO. 3:23-CV-944-JTM**

MARQUIS BENJAMIN,

          **Defendant.**

**<u>OPINION and ORDER</u>**

Lavelle Malone, a prisoner without a lawyer, is proceeding in this case against Correctional Officer Marquis Benjamin "for compensatory and punitive damages for subjecting him to an unconstitutional strip search on June 22, 2023, at approximately 5:42 A.M., in violation of the Eighth Amendment[.]" (DE # 14 at 9.) Officer Benjamin filed a motion for summary judgment. (DE # 66.) Malone filed a response, and Officer Benjamin filed a reply. (DE ## 73, 74, 77.) Malone then filed an unauthorized sur-response, which Officer Benjamin has moved to strike. (DE ## 83, 84, 85.)[1] The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a

---

[1] Northern District of Indiana Local Rule 56-1 provides an opportunity for only a single response, and states that "[a]dditional briefs must not be filed without leave of court." Malone did not request leave to file his sur-response, nor does he provide any argument explaining why he should be granted leave to file an additional brief. Officer Benjamin's motion to strike Malone's unauthorized sur-response will therefore be granted, and Malone's unauthorized sur-response will be stricken from the record. In any event, the court has reviewed the contents of Malone's unauthorized sur-response, and concludes the arguments raised in the sur-response would not change the outcome of this case even if the brief were accepted by the court.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under the Eighth Amendment. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Strip-searching a prisoner violates the Eighth Amendment only if it is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024) (quoting *Whitman v. Nesci*, 368 F.3d 931, 934 (7th Cir. 2004)); *see also King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (noting that strip searches can violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification, such as a need for order and security). "To overcome

summary judgment," the plaintiff must "produce evidence showing that the officers conducted the search in a harassing manner intended to 'humiliate and inflict psychological pain.'" *Jones*, 116 F.4th at 678.

Officer Benjamin provides his own affidavit, in which he attests to the following facts. During all relevant times, Officer Benjamin was assigned as the team leader for the emergency response team, also known as the "E-squad," at Miami Correctional Facility ("MCF"). (DE # 67-1 at 1.) In the early morning hours of June 22, 2023, Officer Benjamin and two other E-squad officers helped conduct a strip search operation of the entire K Housing Unit. (*Id.* at 3.) Around this time, there were many strip searches conducted in the K Housing Unit due to contraband being brought in by inmates in that cell house. (*Id.*) When conducting a strip search operation at nighttime, Officer Benjamin and the E-squad officers generally arrive with a pepper ball gun or a taser to encourage compliance. (*Id.*) Officer Benjamin does not specifically recall the events of the June 22 strip search operation, as he has conducted many strip searches and this operation occurred almost two years before he wrote his affidavit. (*Id.*) If Officer Benjamin had performed a strip search of Malone on June 22, he would have conducted the search pursuant to prison policy and his training for conducting a cell shakedown, and he would not have conducted the search to harass Malone. (*Id.*) Officer Benjamin always follows the exact same procedures when conducting a strip search, which are consistent with both his training and IDOC policy. (*Id.*) Officer Benjamin has always maintained a professional attitude and rapport during any interaction he has had with Malone. (*Id.* at 4.)

Officer Benjamin also provides Malone's deposition testimony, where Malone testified to the following facts. On June 22, 2023, around 5:42 a.m., the entire K Housing Unit was subjected to strip searches. (DE # 67-3 at 13-14.) The correctional officers went cell-by-cell and performed strip searches of all the inmates. (*Id.* at 19.) The K Housing Unit was a "bad cellhouse" where "all of the bad, rowdy people" lived. (*Id.* at 25-26.) Once Officer Benjamin and the other officers arrived at Malone's cell, Malone was requested to strip down in the entryway of his cell. (*Id.* at 13, 21.) Malone felt "uncomfortable" being strip searched in front of the officers and his cellmate. (*Id.* at 23.) While Officer Benjamin was giving Malone instructions during the strip search, he and the other officers were cussing and made derogatory comments to Malone such as calling him a "punk bitch" and "faggot." (*Id.* at 22.) After the search, which lasted about a minute, Malone was ordered to put his clothing back on and was then escorted to a different housing unit while his cell was searched. (*Id.* at 23.)

Officer Benjamin argues summary judgment is warranted in his favor because the strip search was done pursuant to justifiable penological interests and was not abusive or maliciously motivated and, regardless, he is entitled to qualified immunity. (DE # 69.) In his response, Malone argues the strip search was abusive and maliciously motivated for four reasons.

First, Malone argues there was no justification to search him because there was no ongoing riot and there was no "contraband found on me, phone, drugs, knife, weapon, or nothing." (DE # 73-1 at 5.) He states that he "feel[s] that" they only strip searched him to harass and humiliate him because "nothing was never found on me or

4

in my cell." (*Id.*) Here, the fact that no contraband was found on Malone's person or in his cell does not mean the search was unreasonable. Officer Benjamin attests the search was conducted pursuant to the E-squad's search of the entire K Housing Unit, as there was contraband being brought in by inmates in that cellhouse. (DE # 67-1 at 1.) *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (noting the safety and security of the prison facility are legitimate penological objectives); *Henry*, 969 F.3d at 779 ("prison administrators . . . must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize"). Malone concedes the K Housing Unit was filled with a lot of "bad, rowdy people." (DE # 67-3 at 25-26.) The record contains no evidence Officer Benjamin targeted Malone in any way, had any animosity or ill will toward Malone, or even had any prior interactions with Malone before the search. Because there is no evidence to dispute Officer Benjamin's attestation that Malone was searched pursuant to the E-squad's search of the entire K Housing Unit, Malone's vague assertion that he "feels that" they only searched him to harass or humiliate him is insufficient to create any genuine dispute. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary

5

judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.") (quotation marks and brackets omitted).

Second, Malone argues the search was maliciously motivated because Officer Benjamin searched him in the entryway of his cell instead of taking him to the shower, which would have afforded him more privacy. (DE # 73-1 at 6.) Malone testified he felt "uncomfortable" to be strip searched "in front of another man." (DE # 67-3 at 23.) But the fact Malone felt uncomfortable being strip searched in front of another man does not rise to the level of an Eighth Amendment violation. *See Whitman v. Nesic*, 368 F.3d 931, 935 (7th Cir. 2004) (evidence that the plaintiff felt humiliated, without more, is insufficient to survive summary judgment); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation."). While taking Malone to the shower may have afforded him more privacy, the fact that Officer Benjamin performed the strip search in the entryway to Malone's cell in the presence of another man does not amount to a constitutional violation. *See id.*

Third, Malone argues Officer Benjamin and other officers made derogatory comments to him during the strip search by calling him and his cellmate "faggots" and "punk bitches," ordering him to "turn around and spread my ass cheeks," and telling him "you guys want to act like animals, we'll treat you like animals." (DE # 73-1 at 9.) But verbal harassment, by itself, typically does not violate the Eighth Amendment. *See Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) ("Repugnant words . . . will seldom rise

6

to an Eighth Amendment violation."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Whitman*, 368 F.3d at 935; *Calhoun*, 319 F.3d at 939. While derogatory comments like those alleged by Malone can contribute to a finding that a search was conducted in a harassing manner, the Seventh Circuit has never held that derogatory comments alone can transform an otherwise legitimate search into a constitutional violation. *See Del Raine v. Williford*, 32 F.3d 1024, 1040 (7th Cir. 1994) ("Abusiveness occurs when there is evidence of some palpable malevolence attributable to a prison official *exacerbated by* the lack of a justifiable penological objective for the search.") (emphasis added). Accordingly, even accepting as true that Officer Benjamin made derogatory comments to Malone during the strip search, this verbal harassment alone is insufficient to show Malone's Eighth Amendment rights were violated.

Lastly, Malone argues "the officers had their guns pointed at Malone and his cellmate the entire time" he was searched. (DE # 73-1 at 9.) Malone does not provide any further explanation for this statement, and did not raise this allegation in either his complaint or his deposition. Moreover, Malone does not specify what type of "guns" the officers had pointed at him. Officer Benjamin attests the correctional officers had either a taser or a pepper ball gun with them during the June 22 search to "encourage compliance," and Malone does not dispute that attestation. (DE # 67-1 at 3.) Here, accepting as true that officers had either tasers or pepper ball guns pointed at Malone and his cellmate during the strip search, this does not show the search was motivated

by a desire to harass or humiliate Malone. Officer Benjamin attests these weapons were present to "encourage compliance," which relates to the prison's legitimate penological objective of maintaining the safety and security of the prison facility. *See Turner*, 482 U.S. at 89-91. Because there is no evidence the presence of these weapons was intended to harass or humiliate Malone, this allegation is insufficient to show Malone's Eighth Amendment rights were violated.

Accordingly, Officer Benjamin has provided undisputed evidence that the June 22 strip search was conducted pursuant to a routine mass search in furtherance of MCF's legitimate penological interest in maintaining the safety and security of the prison facility and reducing contraband. Malone provides no evidence from which a reasonable jury could conclude that the June 22 strip search was unreasonable, illegitimate, or motivated by a desire to harass and humiliate him. *See Henry*, 969 F.3d at 783 ("[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [the need to preserve internal order and maintain institutional security], courts should ordinarily defer to their expert judgment in such matters[.]"); *King*, 781 F.3d at 897 (strip searches can only violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification). Summary judgment is therefore warranted in favor of Officer Benjamin on this claim.

Alternatively, even assuming a reasonable jury could conclude the strip search violated Malone's Eighth Amendment rights, summary judgment still is warranted in favor of Officer Benjamin because he is entitled to qualified immunity. "Qualified

8

immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652).

To show that a right is clearly established, the burden is on the plaintiff to "demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). A violation is only clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

Here, Malone does not provide any relevant caselaw showing Officer Benjamin's alleged conduct during the strip search violated clearly established constitutional rights. The court has conducted its own research, and has not identified any relevant caselaw holding that an inmate's Eighth Amendment rights were violated where a correctional

9

officer: (1) conducted a strip search of an inmate in the presence of another male inmate; (2) made derogatory comments to an inmate during a strip search; or (3) pointed a pepper ball gun or taser at an inmate during a strip search. Therefore, because it was not "clearly established" in June 2023 that Officer Benjamin's alleged conduct violated Malone's Eighth Amendment rights, Officer Benjamin is entitled to qualified immunity in this case.

In summary, even when viewing the facts in the light most favorable to Malone, no reasonable jury could conclude that the strip search performed by Officer Benjamin on June 22, 2023, violated Malone's Eighth Amendment rights. Alternatively, even if a reasonable jury could find a constitutional violation, summary judgment remains proper in favor of Officer Benjamin because he is entitled to qualified immunity.

For these reasons, the court:

(1) **GRANTS** Officer Benjamin's motion to strike Malone's unauthorized sur-response (DE # 85);

(2) **STRIKES** Malone's unauthorized sur-response (DE ## 83, 84), but it will remain part of the record;

(3) **GRANTS** Officer Benjamin's motion for summary judgment (DE # 66); and

(4) **DIRECTS** the Clerk to enter judgment in favor of Officer Benjamin and against Lavelle Malone and to close this case.

**SO ORDERED.**

Date: March 25, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

10